**STATE of Alaska, Appellant,**

v.

**Gregory Arthur ROZAK, Appellee.**

No. A–7980.

Court of Appeals of Alaska.

May 31, 2002.

---

Sabrina E.L. Fernandez and Lance B. Nelson, Assistant Attorneys General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

Arthur S. Robinson, Robinson & Beiswenger, Soldotna, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

This appeal requires us to interpret 5 AAC 39.107, a regulation enacted by the Board of Fisheries to govern the operation of fishing gear. This regulation establishes a general rule that people who own a permit to operate stationary fishing gear (*e.g.*, set nets or fish wheels) must remain at the site of their gear while it is operating. Gregory Arthur Rozak is a Cook Inlet set netter who was prosecuted for violating this requirement. This appeal arose when the district court dismissed the prosecution against Rozak.

The underlying question is the meaning of subsection (f) of 5 AAC 39.107. Magistrate David S. Landry concluded that subsection (f) exempted permit holders in the Yukon–Northern fishing area from the normal requirement that they remain at the site of their fishing gear while it is operating. Magistrate Landry then concluded that this exemption was unreasonable—that the disparate treatment was not justified by any purported difference between the Yukon–Northern fishing area and other fishing areas of the state. Based on these conclusions, Magistrate Landry ruled that 5 AAC 39.107 unfairly discriminated against Rozak and all other stationary gear permit holders who fished outside the Yukon–Northern area.

As explained in more detail below, we have examined the language of the regulation and we have also reviewed the audio tapes of the Board of Fisheries' discussion when they drafted and enacted subsection (f). Based on our review, we conclude that the district court misinterpreted this subsection. The Board of Fisheries' discussion shows that subsection (f) was not intended to exempt Yukon–Northern area permit holders from the normal requirement that they remain at the site of their gear while it is operating. Rather, the Board of Fisheries intended subsection (f) to clarify or augment those restrictions for permit holders in the Yukon–Northern area.

To the extent that 5 AAC 39.107(f) might call for disparate treatment among permit holders, it is Yukon–Northern permit

holders who face greater restrictions, and thus Rozak (a Cook Inlet permit holder) is a beneficiary of the disparate treatment. For this reason, we reverse the decision of the district court and reinstate the prosecution against Rozak.

*The regulatory language at issue in this appeal*

Subsection (d) of 5 AAC 39.107 establishes the general rule that a person who owns a permit to operate stationary fishing gear "must be physically present at a beach or riparian fishing site during the operation of [the] stationary fishing gear at the site". Subsection (d) allows a permit holder to leave an active fishing site for only two purposes: to travel to or from the location of "a sale of fish caught in [their] gear", or to travel to or from the location of "other stationary gear of the [same] permit holder".

Subsection (e) of 5 AAC 39.107 clarifies these two exceptions to the requirement of physical presence. This subsection declares that when a permit holder travels to a point of sale or to the location of their other stationary gear, the permit holder "shall [remain] within a reasonable distance of the gear". Subsection (e) then defines "reasonable distance" to mean "a distance that ensures that the ... permit holder retains competent supervision of the gear".

These two subsections are augmented by subsection (f), and this subsection is the crux of the present appeal. Subsection (f) announces a special rule for stationary gear permit holders in the "Yukon area ... described in 5 AAC 05.100". (The reference to "Yukon" appears to be a clerical mistake; according to 5 AAC 05.100, the name of this fishing area is officially the "Yukon–Northern" area.[1]) Under subsection (f), a permit holder for stationary fishing gear in the Yukon–Northern area "must be physically present for the initial deployment of the gear at the beginning of the commercial fishing period and at the end of the commercial fishing

period to terminate operation of the gear". The issue is whether this requirement is intended to supersede or, instead, supplement the restrictions codified in subsections (d) and (e).

*The meaning of subsection (f)*

This court addressed the meaning of 5 AAC 39.107(f) in *Baker v. State*, 878 P.2d 642 (Alaska App.1994). In *Baker*, we declared that subsection (f) "appears to strengthen, not relax, the requirement of the permit-holder's presence".[2] Specifically, we interpreted subsection (f) as meaning that

> even in circumstances when [sub]sections (d) and (e) might allow the permit-holder to be absent from the immediate site of the gear, the permit-holder must nevertheless be present at the immediate site of stationary gear for the opening and closing of each commercial fishing period.

*Baker*, 878 P.2d at 647.

In the present case, Magistrate Landry was aware of our decision in *Baker*, but he evidently concluded that we had misread the regulation.

Now, in addition to examining the language of the regulation, we have also reviewed the audio tapes of the Board of Fisheries' discussion when they drafted and enacted subsection (f). Based on our review of this legislative history, we confirm our earlier interpretation of the regulation. The Board of Fisheries' discussion shows that subsection (f) was not intended to exempt Yukon–Northern area permit holders from the normal requirement that they remain at the site of their gear while it is operating. Rather, the Board of Fisheries intended that all permit holders continue to be bound by the normal restrictions on their movement; subsection (f) was meant to clarify or augment those restrictions for permit holders in the Yukon–Northern area.

---

1. 5 AAC 05.100 states: "The Yukon–Northern Area includes all waters of Alaska between the latitude of Point Romanof and the latitude of the westernmost point of the Naskonat Peninsula, including those waters draining into the Bering Sea, and all waters of Alaska north of the latitude of the westernmost tip of Point Hope and west of 141° W. long., including those waters draining into the Arctic Ocean and the Chukchi Sea."

2. *Id.* at 647.

Subsection (f) was first proposed to the Board of Fisheries for the purpose of addressing certain difficulties that had arisen when law enforcement officers attempted to enforce subsections (d) and (e) in the Yukon–Northern fishing area. As explained above, subsections (d) and (e), taken together, require stationary gear permit holders to remain at the site of their gear whenever it is operating, except when the permit holders are selling fish or tending to their other stationary gear, in which case they must remain within a "reasonable distance" of their gear so as to maintain "competent supervision" over it. Subsection (f) was initially drafted to clarify what "reasonable distance" meant in the Yukon–Northern fishing area.

In the Yukon–Northern area, permit holders would sometimes travel long distances to sell their fish.[3] This long travel meant that permit holders would be absent from their gear for relatively long periods. These lengthy absences created an enforcement problem for fish and wildlife protection officers: when the officers found unattended stationary gear, they could not be sure whether the permit holder was violating the law or was instead engaged in a lengthy but authorized absence to sell their fish or attend to their other stationary gear.[4]

There was also confusion concerning how far permit holders could range from their stationary gear. One fish and wildlife protection officer apparently had interpreted "reasonable distance" to mean "shouting distance"—effectively making it impossible for permit holders to keep their gear operating if they had to travel any distance to sell fish or tend to their other gear.[5]

To address these problems, the Board initially contemplated adopting a supplemental definition of "reasonable distance" for the Yukon–Northern area. As proposed, "reasonable distance" in the Yukon–Northern area would mean "a distance that ensures that the ... permit holder is capable of removing the gear [from the water] or stopping the operation of the gear at the end of the fishing period."[6] Eventually, however, the Board decided not to change the definition of "reasonable distance" in subsection (e). As explained by Board Chairman Bud Hodson:

[I]f a trooper landed at a site and the permit holder wasn't there, and say the permit holder came back two and one-half hours later and the trooper asked him, "Where have you been?" and he said, "I've been delivering fish" and ... the trooper says, "Where?" and he says, "Well, down there at Nulato [on the Yukon River]," and the trooper says, "Wait a minute—that's only a fifteen-minute boat ride, you've been gone for two and one-half hours or three hours," that ... would mean that he didn't just go deliver fish and [that circumstance] probably would be able to be construed that he wasn't in competent supervision. On the other hand, if the person came back after two and one-half hours and said, "Hey, I just went on a forty-mile boat ride down here to deliver my fish, you can go check the fish ticket and I've got witnesses—you know, it takes me one hour and forty minutes to get there and one hour and forty minutes to come back, and I was there ten minutes, and this regulation [allows] me to do that because it says I can go deliver my fish at a reasonable distance", we felt that it was at the discretion of the trooper and that if somebody was going to be gone for a lengthy amount of time that they probably could make a

3. *See* Board of Fisheries debate on Proposal 356 (February 26, 1990). Before it was amended to its final form, the proposed amendment read:
   In the Yukon area, a person who holds a crew member fishing license may operate stationary fishing gear under supervision of a CFEC permit holder who is within a reasonable distance of that gear. A reasonable distance means a distance that ensures that the CFEC permit holder is capable of removing the gear or stopping the operation of the gear at the end of the fishing period.

4. *See* Board of Fisheries debate on Proposal 356 (February 26, 1990), statement of Captain Gilson, Alaska State Troopers, Fish and Wildlife Protection Division.

5. *See* Board of Fisheries debate on Proposal 356 (February 26, 1990), statement of Rich Cannon, Alaska Department of Fish and Game.

6. *See* Board of Fisheries Proposal 356.

case. But we just couldn't see any other way to more closely define [reasonable distance] to help out [enforcement officers] to try to make a case on somebody who really wasn't tending their gear.

Board of Fisheries debate on Proposal 356 (February 27, 1990).

Instead of amending the definition of "reasonable distance", the Board enacted subsection (f). Based on Chairman Hodson's statements during the debate, the intent of this new subsection was to clarify that, notwithstanding a permit holder's right to be absent from their stationary gear under subsections (d) and (e), permit holders in the Yukon–Northern area were obliged to be physically present when they deployed their gear at the start of the fishing period and when they stopped the operation of the gear at the end of the fishing period.[7]

The Board's discussion as a whole indicates that their objective in enacting subsection (f) was to balance the state's interest in ensuring that permit holders maintain competent supervision over their gear against the permit holders' interest in keeping their gear running while they transported fish over long distances to points of sale. The Board's discussion also clarifies that subsections (d) and (e) were intended to apply to stationary gear permit holders throughout the state—including the Yukon–Northern area—while subsection (f) would apply only to permit holders within the Yukon–Northern area.[8]

### Conclusion

The district court's decision to dismiss the prosecution against Rozak was premised on the court's conclusion that 5 AAC 39.107(f) unlawfully discriminated in favor of stationary gear permit holders within the Yukon–Northern area by exempting them from the movement restrictions codified in 5 AAC 39.107(d)-(e). As just explained, this conclusion was erroneous. Subsections (d) and (e) apply to all stationary gear permit holders within the state, including permit holders who operate stationary gear within the Yukon–Northern area. Subsection (f) does not supersede subsections (d) and (e); rather, it supplements these provisions. To the extent that subsection (f) calls for disparate treatment of Yukon–Northern area permit holders, Rozak is a beneficiary of this disparity.

For these reasons, the judgement of the district court is REVERSED. The district court is directed to reinstate the prosecution against Rozak.

---

**7.** *See* Board of Fisheries debate on Proposal 356 (February 27, 1990), statement of Chairman Hodson.

**8.** *Id.*